## PEOPLE *v.* ELMER.

109    493
f143   ²275
109    493
153    ²613

1. CRIMINAL LAW—DISORDERLY CONDUCT—FORTUNE TELLING.
    One who professes to possess a power to foretell future events, and who offers his services to the public in that capacity by advertisement in the newspapers, is subject to prosecution as a disorderly person, under 3 How. Stat. § 1997*a*, for "pretending to tell fortunes."

2. TRIAL—DIRECTING VERDICT IN CRIMINAL CASE.
    Where, upon a prosecution for a misdemeanor, the facts are admitted or undisputed, and the only question is one of law as to whether the facts proved constitute the offense charged, the court may properly direct the verdict.

3. CRIMINAL LAW—CONTINUING OFFENSE—ELECTION OF CHARGES.
    Where a respondent is charged with pretending to tell fortunes as a continuing offense, and several instances of such disorderly conduct are shown upon the trial, the prosecution cannot be compelled to elect upon which of these specific acts conviction is asked, all being admissible under the general charge.

Exceptions before judgment from Ionia;  Davis, J. Submitted May 1, 1896.   Decided May 26, 1896.

Arthur Elmer was convicted of being a disorderly person, in that he pretended to tell fortunes.   Affirmed.

The respondent was convicted of being a disorderly person, within the meaning of section 1, chap. 51, 3 How.

Stat., in that he pretended to tell fortunes. The complaint described the offense as a continuing one, and alleged it to have been committed on July 25, 1895, and for 10 days next preceding. The court was of the opinion that the undisputed facts established the offense, and so charged the jury, and directed them to find a verdict of guilty.

On July 23d the respondent caused to be published in one of the papers of Ionia a long advertisement, the material parts of which are as follows:

"WILL ARRIVE AT IONIA, MICH., JULY 23, 1895.—A modern day seer is now in the city, and can be consulted on all conceivable affairs of life and human destiny. This strange gift, which he only uses to the advantage of the human race, excites the wonder and admiration of the most skeptical, and will drive doubt from your mind, and slay skepticism on the threshold of the interview. Being born with this marvelous power, and thoroughly conversant with the occult science, his revelations are truly wonderful, and acknowledged to be of the highest order. It has been said of him: 'Never in the annals of clairvoyancy have future events been so truthfully foretold.' He permits you a peep through the keyhole of the mysterious future, by which you may obtain the key of your future life and success. Advises you with a strange certainty as to the proper course to pursue in life. If business affairs concern you, he gives advice on business transactions, lawsuits, wills, mortgages, speculations, pension claims, and other financial difficulties. If affairs of the heart or emotions of love interest you, he gives some astonishing revelations of courtship, marriage, divorce, and domestic troubles. Restores lost affection, peace, and confidence to lovers and discordant families, on a positive guaranty. Tells the name of your future husband or wife, and date of marriage. Locates lost, stolen, and buried property and treasures, on positive guaranty. No money taken until goods are in your possession. Also locates friends and relatives. No charge until you find them. Psychometry, or soul reading. Doctor gives delineations of character, and tells what you are best adapted for."

The same paper contained another notice, which reads as follows:

"WILL ARRIVE AT IONIA, MICH., JULY 23, 1895.—
A Modern Day Seer, the Noted Dr. Arthur Elmer,
Clairvoyant, Trance Medium, and Healer.   Calls you by
name; tells you what you called for; can give you your
age, even the day and hour you were born; tells your
mother's maiden name; date of your marriage; how many
children you have; gives the full names of your friends,
both in life and beyond the grave; the name of the street
and the number of the house in which you live; gives
number of your watch, check, bank note, etc.; tells how
much money you have in your pocket; will even tell you
what you have eaten within the last twenty-four hours."

The respondent also advertised himself as a "magnetic
healer" and "clairvoyant physician." This advertisement
was accompanied by several letters from those who
claimed to have been treated by him and cured.   Several
witnesses testified that they went to the respondent; that
he pretended to go into a trance, and that, either while
in it, or after he came out of it, he told them what would
happen to them in the future.   One witness testified:
"He said the reason he went into a trance was to tell the
future and the past." The justice of the peace before
whom the respondent was tried testified that the respond-
ent was a witness for himself upon the trial in justice's
court; that he there testified that he had advised Mrs.
Webber, a witness for the people, "to leave her husband;
that he had been in a trance, and had seen her husband
in the act of killing her; that he called his business
'prognosticating,' 'looking into the future;' not 'telling
fortunes.'" The only testimony offered on the part of the
defense was that the respondent informed the witnesses
whom he proposed to call that he could not tell fortunes.
This offer of testimony was rejected by the court, upon
the ground that it did not tend to contradict the case
made by the people, and that it was immaterial what
name the respondent applied to his acts.

*Chaddock & Scully* and *A. A. Ellis,* for appellant.

*R. A. Hawley,* Prosecuting Attorney, for the people.

GRANT, J. (*after stating the facts*). 1. The undisputed facts in this case established the commission of the offense. It is idle to attempt to draw distinctions between professing to possess a power and pretending to exercise that power. This respondent did both. The precise point is decided in *Penny* v. *Hanson*, 16 Cox, Cr. Cas. 173. The English statute, under which conviction was had, provided that "every person pretending or professing to tell fortunes * * * shall be deemed a rogue and a vagabond." 5 Geo. IV. chap. 83, § 4. The circular upon which the respondent was convicted stated that, "by the positions of the planets in the nativity, and their aspects to each other," he was enabled to forecast future events. This circular had been issued in response to an advertisement as follows: "*Wanted*—Every one to have their own nativity cast yearly. Advice given, and astrological questions answered." The court, in deciding the case, said: "No person who was not a lunatic could believe he [the respondent] possessed such power. * * * The advertisement and circular amounted to a pretending and profession to tell fortunes." This language is especially applicable to this case. No sane, intelligent juror could come to any other conclusion than that reached by the circuit judge.

2. No intent was involved. The offense was a misdemeanor. In such cases, when the facts are admitted or are undisputed, it is the duty of courts to instruct juries that the facts proven constitute the offense. There was no question of fact for the jury to pass upon. The conclusion is one of law, and not of fact. Guilt follows, as a matter of law, when the facts are undisputed. This point is ruled by *People* v. *Neumann*, 85 Mich. 98, where this court said, speaking through Justice MORSE:

"In this State, where a judge has directed a verdict of guilty, and the jury have followed such direction, and the facts are admitted or undisputed, and the only question is one of law, applied to such facts, a new trial will not be

granted if the judge was right in his application of the law."

3. As already stated, witnesses for the people had testified to specific acts of pretending to tell fortunes, for which some of them had paid. The defense requested the court to compel the prosecution to elect upon which one of these conviction was asked. The court refused. The ruling was correct. The offense was a continuing one, and any acts to sustain the general charge were admissible. But, if this were not so, the respondent was not prejudiced, because, aside from these specific acts, the advertisement itself constituted the offense.

The conviction is affirmed.

MONTGOMERY, HOOKER, and MOORE, JJ., concurred. LONG, C. J., did not sit.