Marshall, C. J.
 

 An information was filed in the Municipal Court of Cleveland, Ohio, charging Gertrude Davis with having violated Section 13145 of the General Code, prohibiting and penalizing fortune-telling. The information charged continuous violations from May.9, 1925, to May 19, 1925. Section 13145, General Code, provides:
 

 “Whoever, not having been legally licensed so to do, represents himself to be an astrologer, fortune-teller, clairvoyant or palmister, shall be fined not less than twenty-five dollars nor more than one hundred dollars or imprisoned in jail not less than thirty days nor more than three months, or both. ’ ’
 

 Jury trial was demanded.by the defendant, and the trial resulted in a verdict of guilty. Error was prosecuted from the judgment to the Court of Appeals, which court affirmed. The cause was thereupon admitted to this court on allowance of motion to certify the record.
 

 In this court thirteen assignments of error have been argued, which number may be reduced by classification. The first legal question to be considered includes overruling motion to quash the information, overruling demurrer to the information, overruling defendant’s motion for directed verdict at the conclusion of the state’s evidence and again at the conclusion of all the evidence, and that the verdict of the jury is not sustained by sufficient evidence. These four assignments of error are based upon the claim of unconstitutionality of the statute.
 
 *27
 
 It is claimed that the statute violates Section 1 of the federal Fourteenth Amendment, which prohibits the abridgment of the privileges and immunities of citizens, and prohibits deprivation of life, liberty, or property without due process of law; that it further .violates Sections 1 and 2 of the Ohio Bill of Rights, which guarantees the enjoyment of life and liberty and of acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety; and further prohibits the abridgment of the liberty of speech.
 

 It is further contended upon the same assignments of error that, inasmuch as the statute contains the words, “not having been legally licensed so to do,” and no provision has been made either by the state of Ohio or by the city of Cleveland for licensing the craft of fortune-telling, the entire statute has thereby been rendered void and of no effect.
 

 We are unable to determine what was in the mind of the Legislature in inserting that proviso in the statute, though it may be conceived that it was expected that some future Legislature would impose a license and that the insertion of those words was merely a farseeing precaution to avoid the necessity of amending the statute at a future time. In any event, those words cannot be construed as rendering the statute meaningless, because it is the duty of any court in interpreting a statute to give it such interpretation as will give it force and effect, if the same can be done without violence to its general import. Whenever a future statute is passed providing for a license, the-craft of fortune-telling will
 
 *28
 
 then have become legalized, and the statute will have become only regulatory. In its present form, and in the absence of a provision for license, the words must be construed as surplusage, and it only remains to determine whether the Legislature has power to penalize fortune-telling.
 

 An examination of this statute in 94 Ohio Laws, 363, discloses that in the original enactment the provision as to license was carried in a separate section in the following language: '
 

 “Nothing in this act contained shall apply to any astrologer, fortune-teller, clairvoyant or palmister to whom a license to practice has been legally granted.”
 

 This further indicates that the Legislature was looking to the future, and, inasmuch as no license has been provided for, it may be assumed that the Legislature has not yet seen fit to legalize and regulate the practice.
 

 On the question of constitutionality, it is urged that fortune-telling was not an offense at common law and that it is a lawful trade or business which may not be taken away without violation of the Bill of Bights. It may be answered that the Legislature has the right to determine whether or not it is a lawful trade or business, and in making this determination the Legislature is only limited by the limitations of the police power. In determining the constitutionality of the statute, as measured by the police power, we need only inquire whether this statute is an unreasonable, arbitrary, and oppressive exercise of the police power, and whether it is really designed to accomplish a purpose falling within the scope of the police power. Every reasonable pre
 
 *29
 
 sumption is indulged in favor of its constitutionality, and if the statute bears any reasonable relation to the public welfare and public morals the courts may not declare it to be invalid. To do so would be a clear usurpation of legislative power. No authority has been cited and none has been found discussing the constitutionality of penal statutes prohibiting fortune-telling, astrology, clairvoyancy, palmistry, and other similar mystic crafts, though such statutes have been in existence for a long-period. In England a statute was enacted in 1824 which makes punishable as a rogue and a vagabond “every person pretending or professing to tell fortunes, or using any subtle craft, means, or device by palmistry or otherwise to deceive and impose on any of His Majesty’s subjects.” The statute did not define fortune-telling, but it was held in the case of
 
 Penny
 
 v.
 
 Hanson,
 
 L. R., 18, Q. B. Div., 478, that the practice of astrology was a violation of the statute. That statute was again under consideration in
 
 Monck
 
 v.
 
 Hilton,
 
 2 Exch. Div., 268, and in that case a spiritualist was convicted. In the case of
 
 King
 
 v.
 
 Mercott,
 
 4 Can. Crim. Cas., 437, there was ,a conviction for telling fortunes in violation of Section 396 of the Criminal Code of Canada. In the opinion, at page 441, there is a discussion of a statute prohibiting and penalizing fortunetelling, enacted in England, June 24, 1735, during the reign of George II, which statute was held to be in force in the Dominion of Canada in 1890. It was so held in the case of
 
 Regina
 
 v.
 
 Milford,
 
 20 Ontario Rep., 306. A similar statute has been in force in the state of New Jersey since 1799. That statute declares persons who practice,palmistry to
 
 *30
 
 be disorderly persons and punishable as such.
 
 State
 
 v.
 
 Kenilworth,
 
 69 N. J. Law, 114, 56 A., 244. A Michigan statute declares fortune-tellers to be disorderly persons and punishable, and a conviction was approved in
 
 People
 
 v.
 
 Elmer,
 
 109 Mich., 493, 67 N. W., 550. Section 899 of the Criminal Code of New York provides that persons pretending to tell fortunes are disorderly persons, and in the case of
 
 Fay
 
 v.
 
 Lambourne,
 
 124 App. Div., 245, 108 N. Y. S., 874, the Appellate Division of the Supreme Court affirmed the judgment denying to persons the right to use a trade-mark to protect the business of fortune-telling, on the ground that such business was unlawful and a fraud upon the public. That case was affirmed in the Court of Appeals without opinion in 196 N. Y., 575, 90 N. E., 1158. In
 
 State
 
 v.
 
 Neitzel,
 
 69 Wash., 567, 125 P., 939, 43 L. R. A. (N. S.), 203, Ann. Cas., 1914A., 899, a similar statute was' declared to be clearly valid, citing the New Jersey and Michigan cases.
 

 The Ohio statute does not define fortune-teller, but the trial court quoted the definition found in Webster’s Dictionary as follows: “One who professes to tell future events in the life of another,” and in the Standard Dictionary: ‘ ‘ One who pretends to a knowledge of futurity, and foretells the events of one’s life.” The craft of fortune-telling has been in vogue for so long a period, and is so commonly and frequently practiced, that any layman could well have a clear conception of the term, and a well-defined statement of the meaning of it in the statute would be surplusage. The cases cited do not deal with the question of the constitutionality of such legislation, as measured by our state Bill
 
 *31
 
 of Rights and the Fourteenth Amendment to the Federal Constitution, but those cases are valuable as indicating that fortune-telling and similar crafts are fraudulent practices, and therefore not within the protection afforded to a lawful business. It is claimed by counsel that a statute penalizing the craft .of fortune-telling is in violation of the constitutional provision relating to the liberty of speech. To this it may be answered that liberty of speech is not license to speak anything that one pleases freed from all criminal or civil responsibility. The constitutional guaranty of freedom of speech does not deprive the state of its police power to enact laws for the protection of the public safety and morals and the protection of the general welfare.
 

 Another assignment of error relates to the alleged misconduct of certain jurors after the cause was submitted. The court charged the jury that they would not be permitted to separate until they had arrived at a verdict. The claim of misconduct relates to the fact that certain jurors were permitted to go to the toilet unaccompanied by a bailiff. It appears that this was only true as to the women jurors, and that the bailiff accompanied them to the door of the toilet room. It is nothing short of ridiculous to claim this constitutes misconduct or a violation of any statute, in the absence of a showing that improper influences were in fact exerted upon jurors. The situation is therefore governed by the rule declared in
 
 Warner
 
 v.
 
 State,
 
 104 Ohio St., 39, 135 N. E., 249.
 

 The next question to be considered relates to the claim that religious prejudice was injected into the
 
 *32
 
 case by rulings of tbe court on tbe admission of evidence and by portions of the charge relating thereto. To this it may be answered that whatever of religion was injected into the case must be charged to counsel for the, defendant. The trial of the case occupied a period of three days, when it should have been tried in less than a half day. The cross-examination of the prosecuting witness by counsel for defendant, and his lengthy examination of the defendant, related in large measure to her relation as pastor to the Asti-Universal Church. Having carefully analyzed the examination and cross-examination of defendant’s counsel, with a view to determine his theory of the case, it is apparent that he was trying to persuade the court and jury that whatever was done by the defendant was a part of the ceremonial of the Spiritualist Church. The trial court erred in permitting the inquiry into that branch of the subject, but the error was not prejudicial because defendant sought to- gain some advantage from it and evidently failed in the attempt. The court correctly charged on this subject:
 

 “I charge you as a matter of law that this is not a case between any person or individual and the Spiritualist Church, or any message bearer, or any spirit medium or psychometric reader as such. It is simply a case prosecuted by the state of Ohio against the individual, Gertrude Davis; and I say to you further, as a matter of law, if it be determined by you that defendant is a minister of an organized Spiritualist Church, the Asti-Universal Church, Spiritualist, so-called by name, or a message bearer, or what not, that would not justify her to hold herself out or represent herself to be a fortune-teller,
 
 *33
 
 or break the provision of the statute of the state of Ohio in that respect or upon that subject. She would have no greater right as a spiritualist or as a message bearer to tell fortunes contrary to the statute than the members of any other religious or secular group or system of religion or denominational religion.”
 

 This charge is in harmony with the rule declared in
 
 Smith
 
 v.
 
 People,
 
 51 Colo., 271, 117 P., 612, 36 L. R. A. (N. S.), 158;
 
 State
 
 v.
 
 Neitzel,
 
 69 Wash., 567, 125 P., 939, 43 L. R. A. (N. S.), 203, Ann. Cas., 1914A., 899;
 
 Reynolds
 
 v.
 
 United States,
 
 98 U. S., 145, 25 L. Ed., 244. The latter case was a violation of the statute prohibiting polygamy, and the defense was that the accused was a member of the Mormon Church and that polygamy is a part of the religious belief of that church. In the opinion of Chief Justice Waite it was declared that a party’s religious belief cannot be accepted as a justification for his committing an overt act made criminal by the law of the land. That feature of the instant case could not have been prejudicial to the defendant, because it was the theory of her counsel that she was entitled to the benefit of her religious convictions, and that feature of the case was brought in solely and wholly at his instance. The fact that she denied any attempt to foretell the future of the prosecuting witness, and denied that her church permitted any such practices, can make no difference or cause a different rule to apply.
 

 The next question to engage our attention is the refusal of the trial court to charge as requested by defendant as follows:
 

 “Merely representing herself to one person as a
 
 *34
 
 fortune-teller, without holding herself out to any other as such, is not sufficient to convict defendant of the charge for 'which she is on trial. ’ ’
 

 The court did charge at defendant’s request:
 

 “A
 
 fortune-teller is a person who claims ability to foretell future events in other people’s lives
 
 and malees a practice thereof.”
 

 We find no provision of the statute and we know of no rule of law which requires a defendant transgressing this statute to have committed more than one offense in order to be found guilty of a single offense. It is at least doubtful whether the court was required to charge that she must be guilty of the ‘ ‘ practice ’ ’ of telling fortunes. If the court was bound to give such an instruction the record supports it, because it vaguely appears in the testimony that the prosecuting witness had read her advertisement in the Cleveland News. The fact of there being three separate and distinct interviews would further tend to support the verdict and make it properly responsive to the court’s instruction.
 

 It is further claimed that the court, jury, prosecuting attorney, and prosecuting witness committed irregularities during the view of defendant’s premises by the jury. Under no rule of law was the court bound to grant defendant’s request to have the jury view the premises. Having granted that request the jury did view the premises, under the custody of the court bailiff, and accompanied by counsel and the court. Whatever happened during the view of the premises, no complaint of it was made and no exceptions were reserved. Defendant’s counsel did not at that time claim a mistrial. He continued to defend and endeavored to secure a
 
 *35
 
 verdict of not guilty.' After an adverse verdict a motion for new trial was filed, and elaborate affidavits were filed in support of that motion, claiming irregularities during the view of the premises. The trial court, being present and having knowledge of all of the facts and circumstances connected with the view ofi the premises, overruled the motion for new trial, and must necessarily have found the facts against the allegations of the affidavits. This court will not weigh the evidence in connection with the motion for new trial further than to inquire whether there was any abuse of discretion on the part of the trial judge. We find none. The jury was correctly-charged as to the degree of proof, and it was the province of the jury to determine the facts. We find no reason to disturb its verdict. The judgment of the Court of Appeals must be affirmed.
 

 Judgment affirmed.
 

 Day, Allen, Kinkade and Jones, JJ., concur.