PORTER, APPELLEE, *v.* CITY OF OBERLIN, APPELLANT, ET AL.

[Cite as Porter v. City of Oberlin, 3 Ohio App. 2d 158.]

(No. 1619—Decided January 22, 1964.)

*Messrs. Fauver & Fauver*, for appellee.
*Mr. G. L. Severs*, for appellant.

DOYLE, J. This is an action brought by the appellee, I. L. Porter, a taxpayer of the city of Oberlin, Ohio, against the city of Oberlin and various of its officials, and city council-appointed members of the Oberlin Housing Renewal Commission, praying for an injunction restraining them from carrying out any of the provisions of ordinance No. 235 AC CMS, titled "An Ordinance of the City of Oberlin relating to fair Housing Practices," and for a declaratory judgment holding the ordinance unconstitutional as "an infringement on constitutionally-guaranteed property rights by inhibition of Article I, Section 19 of the Constitution of Ohio."

Issues were joined by the pleadings in the Court of Common Pleas of Lorain County; trial was had, and, at the conclusion thereof, the court entered its judgment, holding that the ordinance "imposes restrictions on a person's freedom to dispose of his property by sale or lease, and that the attempt to confer

authority on the city to regulate the rights to, the enjoyment, use, management and transfer of, private property as provided in this ordinance is in violation of Article I, Section 19 of the Ohio Constitution Bill of Rights''; further, that ''the invasion by an Ohio city into the field of regulating private housing under the guise of constitutional home rule has no substantial relation to the public health, morals, safety or welfare, and is clearly unconstitutional.''

The court thereupon permanently enjoined the various defendants ''from carrying out the provisions of said ordinance * * * in any manner, directly or indirectly.''

An appeal on questions of law and fact taken by the city of Oberlin from the judgment entered against it lodged the case in this district state court for trial *de novo*. Trial has been had on substantially the same pleadings and evidence, and we now proceed to pronounce the reasons for a decision here.

Section 19, Article I of the Constitution of Ohio provides:

''Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.''

At the outset we recognize the right of the taxpayer to bring this action (Sections 733.56 and 733.59, Revised Code) and the right of the court, acting within its jurisdiction, to make disposition of the issues presented, even though no attempt has been made to enforce the provisions of the ordinance. We further recognize the right of the charter city of Oberlin ''to exercise all powers of local self-government and to adopt and enforce within * * * [its] limits such local police, sanitary and other similar regulations, as are not in conflict with general laws'' (Section 3, Article XVIII, Constitution of Ohio); and we find no general law of the state in conflict therewith.

The ordinance commences with various "whereases," which, in substance, recognize: (1) an asserted heritage of the city of Oberlin to not "permit minority groups to be discriminated against on the purely arbitrary grounds of race, creed, or color"; (2) that "decent housing is important to the health, welfare and safety of the individual."

A concluding "whereas," immediately prior to the controlling part of the ordinance, states:

"* * * It is hereby declared to be the policy of the city of Oberlin for the protection of the public safety, public health and general welfare, to prohibit discrimination in the selling, leasing, subleasing, renting, assigning or otherwise transfering the title, leasehold or other interest in any dwelling unit which is a part of a housing accommodation, once such dwelling unit is placed on the market for sale, rent or lease. It is further declared that the opportunity to buy, acquire, lease, sublease, occupy and use and enjoy real and personal property which has been placed on the market without discrimination is hereby recognized and declared to be a civil right to be exercised and enjoyed by all citizens of Oberlin equally * * *."

Terms, as used in the ordinance, are defined in the legislation as follows:

"(a) Commission. The term 'commission' means the Housing Renewal Commission.

"(b) Discrimination or discriminate. The terms 'discrimination' or 'discriminate' are hereby defined to include any difference in treatment in the sale, lease, rental or financing of dwelling units or housing accommodations, purely because of race, creed or color.

"(c) Housing accommodation. The term 'housing accommodation' means (1) a building or structure, or a number of buildings or structures, whether or not contiguous, in the city of Oberlin, comprising or containing five or more dwelling units, owned or otherwise subject to the control of one owner, or (2) any parcel or parcels of real estate or lot or lots, whether or not contiguous, in the city of Oberlin, available for the building of five or more dwelling units, owned or otherwise subject to the control of one owner.

"(d) Dwelling unit. The term 'dwelling unit' means (1) a

single room, suite of rooms, or an apartment or a dwelling, occupied or intended for occupancy as separate living quarters, by an individual, by a family or a group of individuals living together or (2) a parcel of real property or a lot available for the construction of a dwelling unit.

"(e) Lending institution. The term 'lending institution' means any person, as defined in this ordinance, regularly engaged in the business of lending money or guaranteeing loans, or procuring lending money or the guarantee of loans, to five or more persons as defined in this ordinance or has outstanding loans on five or more housing units.

"(f) Owner. The term 'owner' includes the lessee, sublessee, assignee, managing agent or other person having the right of ownership or possession or the right to sell, rent or lease, any dwelling unit which is part of a housing accommodation.

"(g) Person. The term 'person' includes an association, partnership, or corporation, as well as a natural person. The term 'person' as applied to partnerships or other associations includes their members, and as applied to corporations includes those officers having control of any dwelling unit falling within this ordinance.

"(h) Agent. The term 'agent' includes a real estate broker, real estate salesman or agent and these terms mean any natural person, partnership, association or corporation, who for a fee or other valuable consideration, sells, purchases, exchanges or rents, or negotiates, or offers or attempts to negotiate the sale, purchase, exchange or rental of the real estate property of five or more persons or any housing accommodations, or holds himself out as engaged in the business of selling, purchasing, exchanging or renting the real property of five or more persons or any housing accommodation.

"(i) Placed on the market. The term 'placed on the market' applies to any dwelling unit which is a part of a housing accommodation when such dwelling unit has been (1) advertised as available for purchase, lease, sublease, or rent, (2) listed with an agent."

Following the definition of terms as shown above, the ordinance proceeds in Section 2 to declare unlawful the following acts:

"(a) For any agent or owner to discriminate against any person purely because of race, creed, or color, in the selling, leasing, renting, assigning or otherwise transfering title, leasehold or other interest in any dwelling unit which is a part of a housing accommodation.

"(b) For any owner or agent to discriminate against any person purely because of race, creed or color, in the terms, conditions, or privileges of the sale, lease, sublease, rental assignment or other transfer of a dwelling unit which is a part of a housing accommodation.

"(c) For any owner or agent to withdraw from the market for the sole purpose of circumventing this ordinance, any dwelling unit which is a part of a housing accommodation.

"(d) For any agent to discriminate purely because of race, creed or color in the selling, leasing, renting or otherwise transfering the title to any dwelling listed with him or his agency.

"(e) For any agent to discriminate purely because of race, creed or color in the furnishing of any facility or services for a dwelling unit sold, leased or rented by him or his agency.

"(f) For any lending institution to discriminate purely because of race, color or creed, in the lending of money, guaranteeing of loans, accepting mortgages, or otherwise making available funds for the purchase, construction, repair or maintenance of any dwelling unit, whether or not said dwelling unit is or is not a part of a housing accommodation."

Under Section 3, the ordinance provides procedure for its enforcement, and declares a penalty against violators. Specifically, it declares that: (a) a fully detailed complaint may be made in writing under oath to the Housing Renewal Commission by an "aggrieved individual or his legal counsel," charging "a violation of any provision of the prohibitive sections"; (b) "The commission shall make a prompt and full investigation of each complaint of the unlawful housing practice"; (c) "If after such investigation the commission by an affirmative concurrence of three-fifths of the members thereto determine that a violation * * * has occurred, it shall attempt to eliminate the unlawful housing practice by conciliation and persuasion"; (d) "In the event the commission fails in the conciliation proceedings, it shall forward all papers including the complaint, in-

vestigation, record of conciliation proceedings, factual findings and recommendation to the city council"; (e) "The complaint, investigation and conciliation proceedings shall be confidential records, and proceedings of the commission shall not be made public until the same are forwarded to the city council"; (f) "The city council shall review the proceeding and shall either dismiss the complaint or refer same to the city solicitor for appropriate legal action under this ordinance."

Under Section 4, a penalty for violation is provided as follows: "Any person who violates any of the provisions of this ordinance shall be subject to a fine not exceeding one hundred and 00/100 dollars ($100) and costs."

The plaintiff taxpayer, in challenging the constitutionality of the ordinance, argues that "The ordinance constitutes an unreasonable deprivation of individual property and contract rights," and violates Section 19, Article I of the Constitution of Ohio, by negating the provision that "Private property shall ever be held inviolate, but subservient to the public welfare."

Recognizing that the Constitution of the state of Ohio is a limitation upon the power of the legislative body of the city of Oberlin (the city council), we direct attention here to the question of whether the Constitution precludes or permits the enactment and enforcement of the instant ordinance.

As to which claim is right must be determined by all the essential parts of the Constitution. In the preamble we find the following:

"We, the people of the state of Ohio, grateful to Almighty God for our freedom, to secure its blessings and promote our common welfare, do establish this Constitution."

It here appears that the Constitution was established to secure the blessings of freedom, and to promote the common welfare. All laws enacted pursuant thereto must be subject to such mandate. Again, there may be found in the first section of the Ohio Bill of Rights the following:

"All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety."

In the following section of the Bill of Rights it is stated:

"2. All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary * * *."

Consonant with the provisions of the Ohio Constitution, we observe the well-recognized principle of law that neither property rights nor contract rights are absolute rights, for the obvious reason that a society cannot peacefully exist if a person may, at his will, use his property or contract rights to the detriment of his fellow men, or to do them harm; and equally fundamental with the private right of property and contract is the public right to regulate these private rights in the common interest.

This concept of the law has found expression in several cases in this state, with the added statement that a municipal ordinance providing for a police regulation under the Home Rule Amendment (Section 3, Article XVIII, Constitution of Ohio) which relates to a restriction of property or contract rights in the individual "in the common interest" must, for its validity, be necessary to promote the health, safety, morals, or general welfare, of society as a whole. See: *City of Cincinnati* v. *Correll,* 141 Ohio St. 535.

This basic principle in constitutional law is expressed in *Davis* v. *State*, 118 Ohio St. 25, at pp. 28-29 (cited with approval in *State, ex rel. Church,* v. *Brown, Secy. of State*, 165 Ohio St. 31), as follows:

" '* * * In determining the constitutionality of the statute, as measured by the police power, we need only to inquire whether this statute is an unreasonable, arbitrary, and oppressive exercise of the police power, and whether it is really designed to accomplish a purpose falling within the scope of the police power. Every reasonable presumption is indulged in favor of its constitutionality, and if the statute bears any reasonable relation to the public welfare and public morals, the courts. may not declare it to be invalid.' "

While the foregoing quotation treats of a state statute, the same principle applies to the instant municipal ordinance, for the reason that the ordinance applies to a field not covered by state legislation.

If, therefore, the legislation before us cannot be supported

upon any rational basis of fact that reasonably can be conceived to sustain it, in the light of the Constitution and the public policy, this court must declare it unconstitutional. To the contrary, if the questions raised are fairly debatable, this court must declare the ordinance constitutional, as we cannot and must not substitute our judgment for that of the legislative body of the city of Oberlin which passed the ordinance as a police regulation for the city.

The record before us contains evidence to support the following facts:

1. The city of Oberlin has a population of approximately 8,000 persons, approximately 2,000 of whom are college students.

2. Included in the population are approximately 2,000 Negroes and 6,000 Caucasions.

3. Between 85 and 90 percent "of Negro families * * * live either in the southeast section of town or on two streets adjoining that section."

4. Approximately 50% of the listings for the rental or purchase of real property with real estate brokers "carry owner-imposed race restrictions."

5. A paragraph in the code of ethics of a broker in real estate reads: "In accepting employment as an agent, the broker pledges himself to protect and promote the interests of the client. This obligation of absolute fidelity to the client's interest is primary, and does not relieve the broker from the obligation of dealing fairly with all parties to the transaction."

6. There is no evidence indicating discrimination in banking practices.

7. Committee research, investigation, public hearings and debates, preceded the adoption of the ordinance by city council.

As we view the petitioner's complaint that the ordinance "is an effort of the council * * * to enact limitations and restrictions on the inherent right to own, sell, lease, and otherwise dispose of and deal with respect to, real property, and to prohibit the exercise of the liberty of choice with whom the owner of property and his agents may transact the business of selling and renting his property," a majority of this court concludes that, while the ordinance does in fact impose restrictions on the rental and sale of property, nevertheless it must

be recognized that, in this state, discrimination on the basis of color, creed and race is and has been contrary to its public policy, and that the private right of property and contract may be regulated and even reasonably abridged if done to secure the blessings of freedom and to promote the common welfare of all citizens of the state, regardless of race, color or creed.

The claim that the ordinance "is an abuse of and exceeds the corporate powers of said city of Oberlin, Ohio and constitutes an infringement on constitutionally-guaranteed property rights, by inhibition of Article I, Section 19, of the Constitution of Ohio," by limitations "on the right of the property owner and his agent to sell, lease and otherwise dispose of his property how and to whom he chooses, unrestricted as to race, color, religion, national origin, or any other factor," a majority of this court finds untenable under the facts and the law of this case. A police regulation enacted for the common welfare of the citizens of a community, even though it affects one's property or contract rights, is not necessarily the taking of property in the constitutional sense.

In further answer to the petitioner's complaint, a majority of the court is of the opinion, and so holds, that the ordinance, designed and enacted to prevent discrimination in the field of private housing, bears a substantial and reasonable relation to the health, comfort, safety, convenience and welfare of the residents of the city of Oberlin, and is not an unreasonable, arbitrary or oppressive exercise of the police power.

In finding, as a majority of the members of this court does, on the issues stated above, we adhere to the well-established principle of law, heretofore set forth, that every reasonable presumption must be given in favor of the constitutionality of a duly-enacted law when it is designated to accomplish a purpose falling within the scope of the police power of a legislature or city council.

It is the conclusion of the court's majority that Oberlin's council's legislation has not been proved unconstitutional; and, as a consequence, it will be declared a constitutional enactment and injunction will be denied.

*Injunction denied.*

HUNSICKER, P. J., concurs.

STEVENS, J., dissents.