[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Jones,* Slip Opinion No. 2018-Ohio-4182.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4182

IN RE APPLICATION OF JONES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Jones,* Slip Opinion No. 2018-Ohio-4182.]**

*Attorneys—Character and fitness—Prof.Cond.R. 5.5—A lawyer admitted to practice law in another jurisdiction who provides legal services exclusively in that jurisdiction from Ohio pending resolution of an application for admission to Ohio bar without examination and who otherwise complies with Prof.Cond.R. 5.5(c) is providing legal services on temporary basis and therefore has not engaged in unauthorized practice of law—Application for admission without examination approved.*

(No. 2018-0496—Submitted July 17, 2018—Decided October 17, 2018.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 668.

_____

SYLLABUS OF THE COURT

A lawyer admitted to practice law in another jurisdiction who provides legal services exclusively in that jurisdiction from an office in Ohio pending resolution of an application for admission to the Ohio bar without

examination and who otherwise complies with the provisions of Prof.Cond.R. 5.5(c) is providing legal services on a temporary basis and therefore has not engaged in the unauthorized practice of law.

---------------

**O'DONNELL, J.**

**{¶ 1}**   Alice Auclair Jones is licensed to practice law in Kentucky and applied for admission to the practice of law in Ohio without examination.  The Board of Commissioners on Character and Fitness found that after Jones filed her application, she engaged in the unauthorized practice of law by practicing Kentucky law from an Ohio office and failed to prove she has the requisite character, fitness, and moral qualifications to practice law in Ohio; therefore, it recommends that we disapprove her application.  Jones objects to the findings and the recommendation.

**{¶ 2}**   The issues presented are whether Jones violated Prof.Cond.R. 5.5(c), which permits a lawyer to "provide legal services on a temporary basis in this jurisdiction" under certain circumstances, and whether this court should approve her application.  We conclude that a lawyer admitted to practice law in another jurisdiction who provides legal services exclusively in that jurisdiction from an office in Ohio pending resolution of an application for admission to the Ohio bar without examination and who otherwise complies with the provisions of Prof.Cond.R. 5.5(c) is providing legal services on a temporary basis and therefore has not engaged in the unauthorized practice of law.  Because Jones complied with the rule, we conclude she did not engage in the unauthorized practice of law and has the requisite character, fitness, and moral qualifications to practice law in Ohio, and we approve her application pursuant to Gov.Bar R. I(9)(F)(1).

## Background

**{¶ 3}**   Jones graduated from George Mason University School of Law, was admitted to practice law in Kentucky in 2009, and is a member in good standing of the Kentucky bar.  She initially practiced as an assistant commonwealth attorney in

Jefferson County, Kentucky, and in 2014, took a position with Huddleston Bolen, L.L.P., a law firm in Louisville, Kentucky, that subsequently merged with Dinsmore & Shohl, L.L.P.

{¶ 4} On October 26, 2015, Jones applied for admission to the Ohio bar without examination pursuant to Gov.Bar R. I(9). In November 2015, she moved to Cincinnati, Ohio, for personal reasons and transferred to the Cincinnati office of Dinsmore & Shohl, where she practiced law exclusively in matters related to pending or potential proceedings before tribunals in Kentucky. She also maintained an office at the firm's Louisville location and frequently went to Kentucky for depositions and hearings.

{¶ 5} The admissions committee of the Cincinnati Bar Association recommended approval of her character, fitness, and moral qualifications to practice law. However, due to a concern that Jones was engaging in the unauthorized practice of law, the Board of Commissioners on Character and Fitness invoked its sua sponte investigatory authority conferred by Gov.Bar R. I(10)(B)(2)(e) and appointed a panel to conduct a hearing on the matter.

{¶ 6} At the hearing, Jones argued that Prof.Cond.R. 5.5(d)(2) permitted her to establish an office in Ohio if she provided legal services she was authorized to provide by Ohio law and that Prof.Cond.R. 5.5(c) authorized her to provide legal services in Ohio on a temporary basis. Jones testified that in her view, the services she is providing from Ohio during the pendency of her application are temporary because if she is not admitted, she will have to "find a place to practice in the state of Kentucky," and if she is admitted, she will "integrate into the Cincinnati, Ohio, office" and her "practice will change."

{¶ 7} The panel found Prof.Cond.R. 5.5(c) did not apply because it "does not appear that Ms. Jones meets the requirement that she regularly be practicing law in Kentucky since by her own testimony she has lived and worked in Ohio since 2015" and the panel did "not believe that her practice of law has been temporary as

contemplated by" that rule. Thus, the panel found she was currently engaged in the unauthorized practice of law in Ohio. Although Jones "otherwise [had] no issues that would affect her character and fitness," the panel was "disturbed" by the ongoing nature of her conduct and recommended that the board hold the matter in abeyance and give Jones 30 days to cease the practice of law in Ohio and provide an affidavit representing that she is engaging only in services that could be rendered by a law clerk or paralegal.

{¶ 8} The board found Jones was currently engaged in the unauthorized practice of law and followed the panel's recommendation, but Jones did not cease her practice in Ohio and instead moved for reconsideration and filed an affidavit indicating she would continue to practice in Ohio during the pendency of her application.

{¶ 9} The panel recommended the board deny the motion for reconsideration, again rejecting the claim that Jones's services were temporary for purposes of Prof.Cond.R. 5.5(c). It explained that the term "temporary" should be contrasted with "the earlier reference in the rule to establishing an office or a systematic and continuous presence. If a lawyer has established an office and a continuous and systematic presence, then it can reasonably be concluded that the services being rendered by the lawyer are not temporary." To support this interpretation, the panel relied on Gov.Bar R. I(9)(H) and a proposal of the American Bar Association for a model rule on practice pending admission. It found that Jones "has maintained an office and a continuous and systematic presence in Ohio and has been practicing law," was engaged in the unauthorized practice of law, and had "failed to prove by clear and convincing evidence that she possesses the character, fitness, and moral qualifications for admission to the practice of law in Ohio."

{¶ 10} The board adopted the panel's report and recommends that we disapprove Jones's application for admission without examination.

**Objections to Board Recommendation**

{¶ 11} Jones has filed objections to the board's findings and recommendation. She asserts the term "temporary" "is readily and correctly understood as the opposite of 'permanent' " and she complied with Prof.Cond.R. 5.5(c)(2), which she claims permits a lawyer to "provide legal services in Ohio during the temporary period in which the lawyer's application to be admitted by reciprocity to the Ohio Bar is pending" if the lawyer satisfies the other requirements of the rule. She maintains the panel's emphasis on her establishing an office or other systematic and continuous presence in Ohio is misplaced because Prof.Cond.R. 5.5(c)(2) permits such conduct for a temporary period and that alternatively, her practice "cannot reasonably be interpreted as a 'systematic and continuous' Ohio presence." In addition, Jones asserts that "a resolution against her * * * clashes with" the Due Process Clause and the Privileges and Immunities Clause of the United States Constitution.

{¶ 12} The Cincinnati Bar Association supports her position.

**Issue**

{¶ 13} The issue presented is whether Jones provided legal services on a "temporary basis" in Ohio for purposes of Prof.Cond.R. 5.5(c).

**Law and Analysis**

{¶ 14} Gov.Bar R. I(11)(D)(1) specifies that an applicant for admission to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." And the "[c]ommission of an act constituting the unauthorized practice of law" is one factor to be considered in evaluating an applicant's character, fitness, and moral qualifications. Gov.Bar R. I(11)(D)(3)(c).

{¶ 15} Gov.Bar R. I(9)(H) generally prohibits applicants for admission without examination from engaging "in the practice of law in Ohio prior to the presentation of the applicant to the Court pursuant to division (G) of this section."

However, Gov.Bar R. VII(2)(A)(1)(f) specifically excepts from the definition of the unauthorized practice of law "[r]endering legal services in accordance with Rule 5.5 of the Ohio Rules of Professional Conduct."

{¶ 16} Prof.Cond.R. 5.5(b)(1) prohibits "[a] lawyer who is not admitted to practice in this jurisdiction" from establishing "an office or other systematic and continuous presence in this jurisdiction for the practice of law," "except as authorized by these rules or other law." Prof.Cond.R. 5.5(d)(2) provides that "[a] lawyer admitted and in good standing in another United States jurisdiction may provide legal services in this jurisdiction through an office or other systematic and continuous presence" if "the lawyer is providing services that the lawyer is authorized to provide by * * * Ohio law."

{¶ 17} Prof.Cond.R. 5.5(c)(2) authorizes a lawyer to "provide legal services on a temporary basis in this jurisdiction" if (1) the lawyer "is admitted in another United States jurisdiction," (2) the lawyer "is in good standing in the jurisdiction in which the lawyer is admitted," (3) the lawyer "regularly practices law," (4) "the services are *reasonably* related to a pending or potential proceeding before a *tribunal* in this or another jurisdiction," and (5) "the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or *reasonably* expects to be so authorized." (Italics sic.)

{¶ 18} "Temporary" means "[l]asting for a time only; existing or continuing for a limited (usu. short) time; transitory." *Black's Law Dictionary* 1693 (10th Ed.2014); *accord Webster's Third New International Dictionary* 2353 (2002).

{¶ 19} Comment 6 to Prof.Cond.R. 5.5 notes:

> There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in this jurisdiction, and may therefore be permissible under division (c). Services may be

6

"temporary" even though the lawyer provides services in this jurisdiction on a recurring basis, *or for an extended period of time*, as when the lawyer is representing a client in a single lengthy negotiation or litigation.

(Emphasis added.)

{¶ 20} A lawyer who applies for admission without examination to the Ohio bar in accordance with Gov.Bar R. I(9) and thereafter provides legal services from Ohio in the jurisdiction where that applicant is already admitted to practice law pending the resolution of that application is providing services on a temporary basis because those services are transitory and will continue only until the application is resolved.

{¶ 21} Here, the record establishes that Jones satisfied the requirements of Prof.Cond.R. 5.5(c)(2). She is a lawyer who is admitted in Kentucky, is in good standing in that jurisdiction, regularly practices law, and is providing legal services from an office in Ohio, and those services are reasonably related to pending or potential proceedings before tribunals in Kentucky, where she is authorized by law to appear in such proceedings. Although Jones began practicing Kentucky law from Ohio more than two years ago, after she had applied for admission prior to moving to Ohio, her practice from Ohio pending her application is on a temporary basis because the continuation of her practice depends on the resolution of her application.

{¶ 22} This case stands in contrast to *In re Egan*, 151 Ohio St.3d 525, 2017-Ohio-8651, 90 N.E.3d 912, in which Shannon O'Connell Egan, an attorney admitted to the Kentucky bar, established offices in Cincinnati, Ohio, from which she practiced Kentucky law for more than ten years. Although this court concluded she "engaged in the unauthorized practice of law in this state for an extended period of time," *id.* at ¶ 12, Egan practiced in Ohio for six years before filing the first of

7

two applications for admission to the Ohio bar without examination and she admitted that her practice was not temporary for purposes of Prof.Cond.R. 5.5(c).

## Conclusion

**{¶ 23}** A lawyer who resides in Ohio and who practices only the law of an out of state jurisdiction from an office in Ohio and appears only before tribunals in a foreign jurisdiction pending the resolution of an application for admission without examination to the Ohio bar is providing services on a temporary basis for purposes of Prof.Cond.R. 5.5(c). Because Jones satisfied the requirements of Prof.Cond.R. 5.5(c)(2) by practicing Kentucky law from an office in Ohio pending the resolution of her application, she has not engaged in the unauthorized practice of law and therefore she does possess the requisite character, fitness, and moral qualifications to practice law in this state. Accordingly, we conclude that Jones did not engage in the unauthorized practice of law. We approve her application for admission without examination.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, and FISCHER, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY and DEGENARO, JJ.

_____

**DEWINE, J., concurring in judgment only.**

**{¶ 24}** Does an out-of-state attorney who practices law exclusively in the courts of the state where she is licensed engage in the unauthorized practice of law because she happens to work out of an office in Ohio? Prof.Cond.R. 5.5, a rule promulgated by this court, seems to say that the answer is yes. But in my view, the rule—as applied in the situation before us and others like it—runs afoul of constitutional guarantees.

**{¶ 25}** The majority reaches the correct result in approving Alice Auclair Jones's application for admission without examination. Majority opinion at ¶ 23.

It does so by concluding that the Board of Commissioners on Character and Fitness misread the rule. *Id.* at ¶ 20. But as I see it, the problem is not that the board misread the rule; I'm convinced that the board's reading is correct. The problem is that as applied here, the rule is irrational and arbitrary and cannot constitutionally be enforced. I therefore concur in the court's judgment approving Jones's application, but I do so because I find the rule to be unconstitutional when applied to Jones and others like her.

## I. The majority incorrectly reads the unauthorized-practice-of-law provisions of the Rules of Professional Conduct

{¶ 26} The Ohio Constitution grants this court original jurisdiction over the "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Article IV, Section 2(B)(1)(g), Ohio Constitution. Pursuant to that authority, we have promulgated sets of rules and established boards to oversee the implementation of those rules on our behalf. This case involves the construction of one such set of rules—the Rules of Professional Conduct—and a recommendation from one of our boards—the Board of Commissioners on Character and Fitness.

{¶ 27} It is undisputed that Jones practiced law exclusively in matters related to pending or potential proceedings before tribunals in Kentucky. She did not hold herself out to be an Ohio attorney. She did not practice in Ohio courts. And she did not advertise for business in Ohio. In short, she conducted her practice like any other Kentucky attorney, but she happened to be working out of an office located in Ohio while doing so. We might say—as we do of many employees in today's world—that she was working remotely.

{¶ 28} Confronted with these facts, the board concluded that Jones had engaged in the unauthorized practice of law in violation of Prof.Cond.R. 5.5(b). Under the rule, unless authorized by the professional-conduct rules or other law, a lawyer who is not admitted to practice in Ohio "shall not * * * establish an office

or other systematic and continuous presence in this jurisdiction for the practice of law." Prof.Cond.R. 5.5(b)(1).

{¶ 29} Jones conceded that she had established an office and a continuous *physical* presence in Ohio, but she maintained that her practice was authorized because she was providing services on a "temporary basis" as authorized by Prof.Cond.R. 5.5(c), which states:

> A lawyer who is admitted in another United States jurisdiction, is in good standing in the jurisdiction in which the lawyer is admitted, and regularly practices law may provide legal services on a temporary basis in this jurisdiction if * * *:
>
> * * *
>
> (2) the services are *reasonably* related to a pending or potential proceeding before a *tribunal* in * * * another jurisdiction, if the lawyer * * * is authorized by law or order to appear in such proceeding * * *.

(Italics sic.) The board rejected Jones's argument, finding that her practice was not temporary. As a consequence, it recommended that her application for admission without examination be denied.

{¶ 30} The majority determines that Jones falls within the Prof.Cond.R. 5.5(c)(2) exception because she was providing services on a temporary basis in Ohio. Majority opinion at ¶ 21. But as much as the majority strains to find otherwise, the provision does not apply. The provision does not define "temporary," but its meaning becomes clear when read in the context of the entire rule. Prof.Cond.R. 5.5(b) begins with language of exclusion, stating that a lawyer not admitted to practice in Ohio may not "establish an office or other systematic and continuous presence in the jurisdiction for the practice of law." Prof.Cond.R.

5.5(b)(1). It then sets up two categories of exceptions: subsection (c) applies to attorneys whose out-of-state practice requires them to come into Ohio to perform work on their cases on a temporary basis, and subsection (d) prescribes when an out-of-state lawyer can practice in Ohio "through an office or other systematic and continuous presence."[1] Thus, practicing on a "temporary basis" in subsection (c) is juxtaposed with practicing "through an office" in subsection (d). It is clear, then, that an attorney who sets up an office in Ohio is not providing services on a "temporary basis" within the meaning of the rule.

{¶ 31} The comments to the rule support this reading. Regarding subsection (c), the comments explain that the provision "does not authorize a lawyer to establish an office * * * in this jurisdiction without being admitted to practice generally here." Prof.Cond.R. 5.5, Comment 5. Similarly, "a lawyer who is admitted to practice law in another jurisdiction and who establishes an office * * * in this jurisdiction must become admitted to practice law generally in this jurisdiction," except as permitted in subsection (d). Prof.Cond.R. 5.5, Comment 15.

{¶ 32} Because she established an office in Ohio, Jones's practice was not temporary within the meaning of Prof.Cond.R. 5.5(c). Thus, her arrangement was not authorized by our rules. The question remains, however, whether disapproving Jones's application under these circumstances would violate her constitutional rights.

## II. This case presents issues under the federal and state Constitutions

{¶ 33} In addition to her argument regarding the construction of Prof.Cond.R. 5.5, Jones asserts that disapproval of her application would violate

---

[1] The services that may be provided "through an office or other systematic and continuous presence" without admission to the Ohio bar are limited to services provided to an employer or its organizational affiliates for which a tribunal's permission to appear pro hac vice is not required, services that the lawyer is authorized to provide by federal or Ohio law, and certain pro bono services. Prof.Cond.R. 5.5(d).

the Due Process and Privileges or Immunities Clauses of the Fourteenth Amendment to the United States Constitution as well as the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.

{¶ 34} Missing from Jones's argument is any claimed violation of the Ohio Constitution. Ordinarily, we will not consider a constitutional claim that has not been raised. But this case presents a circumstance that is different from the usual. Here, we are confronted not with a challenge to a legislative enactment, as is typically the case, but with a challenge to rules promulgated by this court under the authority granted to us by the Ohio Constitution. "This court may no more disregard or infringe upon the constitutional rights of our citizens in the exercise of its regulatory functions than may any other branch of government." *Shimko v. Lobe*, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 27. Because it is our own rule that is at issue, we are obligated in the first instance to ensure that the rule comports with constitutional guarantees. Thus, in addition to the federal constitutional claims raised by Jones, I consider whether our rule as applied to Jones comports with the Ohio Constitution.

{¶ 35} In reviewing the constitutionality of our rules, we use the same standards applied to any other constitutional challenge. Our rules "must comply with the state and federal constitutions like any other rules and may be tested in any court of competent jurisdiction." *Christensen v. Bd. of Commrs. on Grievances & Discipline*, 61 Ohio St.3d 534, 537, 575 N.E.2d 790 (1991).

A. *The Ohio and federal Constitutions protect one's right to pursue a chosen profession free from arbitrary and unreasonable governmental restraints*

{¶ 36} The Ohio Constitution recognizes that all people possess "certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety." Article I, Section 1, Ohio Constitution. This concept dates back to the founding days of our state. While the language was introduced in its

current form in 1851 with the enactment of our modern constitution, Ohio's first constitution contained substantially similar language: "[A]ll men are born equally free and independent, and have certain natural, inherent and unalienable rights; amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety * * *." Article VIII, Section 1, Ohio Constitution of 1802.

{¶ 37} This court has long held that the liberty and property rights guaranteed by Article I, Section 1 encompass a right to pursue one's chosen profession:

> The word "liberty," as used in the first section of the Bill of Rights, does not mean a mere freedom from physical restraint or state of slavery, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare.

*Palmer v. Tingle*, 55 Ohio St. 423, 441, 45 N.E. 313 (1896). Thus, we have affirmed that "[t]he right to labor, to contract, to do business or to engage in any of the common occupations of life is one of the inalienable rights of the citizen." *Sanning v. Cincinnati*, 81 Ohio St. 142, 156, 90 N.E. 125 (1909); *see also Cincinnati v. Correll*, 141 Ohio St. 535, 49 N.E.2d 412 (1943); *Frecker v. Dayton*, 153 Ohio St. 14, 90 N.E.2d 851 (1950).

{¶ 38} Historically, we have understood that "[t]he rights guaranteed by Article I of the Constitution are not unrestricted rights but are subject to limitation or abrogation to such extent as may be necessary to promote the health, safety, morals or general welfare of society as a whole." *Correll* at 538. Thus, we have held that a statute proscribing fortune-telling was not "an unreasonable, arbitrary,

and oppressive exercise of the police power," *Davis v. State*, 118 Ohio St. 25, 28, 160 N.E. 473 (1928), because "fortune-telling and similar crafts are fraudulent practices, and therefore not within the protection afforded to a lawful business," *id.* at 31. On the other hand, we have determined that a municipal regulation limiting the hours during which one could operate a barber shop was an impermissible exercise of the police power because "[w]hether the patrons of a barber shop get a hair cut, shave, shine, or any other service rendered in a barber shop between the hours of 8:00 o'clock a.m. and 8:00 o'clock p.m. or at some other time of the day or night * * * can have no possible relation to the safety, morals or general welfare of the public." *Correll* at 540-541.

{¶ 39} Most recently, we have stated the test for "reviewing legislation that impacts the rights guaranteed by Section 1, Article I" as follows: "[T]he legislation will be upheld if it bears a real and substantial relation to the public health, safety, morals, or general welfare, and if the legislation is not arbitrary or unreasonable." *State v. Williams*, 88 Ohio St.3d 513, 524, 728 N.E.2d 342 (2000), citing *Benjamin v. Columbus*, 167 Ohio St. 103, 110, 146 N.E.2d 854 (1957). The same standards apply to rules promulgated by this court. *See Christensen*, 61 Ohio St.3d 534, 575 N.E.2d 790.

{¶ 40} The Fourteenth Amendment to the federal Constitution also has been held to protect the right of an individual to pursue and continue in a chosen occupation free from unreasonable government interference. *Dent v. West Virginia*, 129 U.S. 114, 121-122, 9 S.Ct. 231, 32 L.Ed. 623 (1889); *Allgeyer v. Louisiana*, 165 U.S. 578, 589, 17 S.Ct. 427, 41 L.Ed. 832 (1897); *Truax v. Raich*, 239 U.S. 33, 38-41, 36 S.Ct. 7, 60 L.Ed. 131 (1915). The state may set standards and regulate professions with the aim of protecting the public from "the consequences of ignorance and incapacity, as well as of deception and fraud." *Dent* at 122. But the state "cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or

14

Equal Protection Clause of the Fourteenth Amendment." *Schware v. New Mexico Bd. of Bar Examiners*, 353 U.S. 232, 238-239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), citing *Dent*. Rational-basis review applies to such claims. As the court explained in *Schware*, professional qualifications imposed by the state on the practice of law "must have a rational connection with the applicant's fitness or capacity to practice law." *Id.* at 239.

### B. Ohio does not have any legitimate government interest in regulating an attorney who does not practice in Ohio courts or provide Ohio legal services

{¶ 41} Under both the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Ohio Constitution, the constitutional question here turns on identifying Ohio's interest in prohibiting Jones from representing her Kentucky clients while working in a Cincinnati office. The short answer is that there is none.

{¶ 42} Two state interests generally have been identified as supporting attorney-regulation schemes. First, a state's interest in regulating attorneys arises from the role that lawyers serve in administering justice through the state's court system. As the United States Supreme Court has explained, "[the] interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.' " *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975).

{¶ 43} The other state interest in regulating attorneys is the protection of the public. Our unauthorized-practice-of-law regulations flow from the notion that such rules are "generally necessary to protect the public against incompetence, divided loyalties, and other attendant evils that are often associated with unskilled representation." *Cleveland Bar Assn. v. CompManagement, Inc.*, 104 Ohio St.3d 168, 2004-Ohio-6506, 818 N.E.2d 1181, ¶ 40; *see also Middlesex Cty. Ethics Commt. v. Garden State Bar Assn.*, 457 U.S. 423, 434-435, 102 S.Ct. 2515, 73

L.Ed.2d 116 (1982). That sentiment is reiterated in the Ohio Rules of Professional Conduct; "limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons," Prof.Cond.R. 5.5, Comment 2. Likewise, the provisions of Prof.Cond.R. 5.5(c) are meant to protect "the interests of clients and the public." Prof.Cond.R. 5.5, Comment 8.

{¶ 44} But when applied to a lawyer who is not practicing Ohio law or appearing in Ohio courts, Prof.Cond.R. 5.5(b) serves no state interest. Plainly, as applied to such a lawyer, the rule does not further the state's interest in protecting the integrity of our court system. Jones, and others like her, are not practicing in Ohio courts. Nor does application of the rule to such lawyers serve the state's interest in protecting the Ohio public. Jones and others in her situation are not providing services to or holding themselves out as lawyers to the Ohio public. Jones's conduct as a lawyer is regulated by the state of Kentucky—the state in whose forums she appears.

{¶ 45} The problem is that unless a specific exception applies, Prof.Cond.R. 5.5(b)(1) holds one to be engaged in the "unauthorized practice of law" and subject to legal sanction therefor simply because one has established an office or a systematic and continuous presence in the state. The rule deems such a lawyer to have engaged in the unauthorized practice of law regardless of whether her practice touches on the Ohio public or Ohio courts. In an earlier age, perhaps such a rule made sense. Before the advent of the Internet, electronic communication, and the like, a lawyer who worked in Ohio was almost always practicing Ohio law. But today that is hardly the case. Any number of lawyers, for any number of reasons, may choose to do their work from Ohio. Yet that does not give Ohio a right to prohibit their conduct.

{¶ 46} Indeed, imagine what would happen if the rule were strictly enforced. Are we to ban lawyers from setting up a secondary office inside their homes so that they can access their files remotely simply because their homes

happen to be in Ohio and their practices in another state? What about a New York attorney who maintains an Ohio vacation home on Lake Erie and is there for several months of the year? Certainly such an attorney has a continuous and systematic presence in Ohio, but are we really going to say that she has engaged in the unauthorized practice of law because she does New York legal work at her vacation home?

{¶ 47} I would conclude that as applied to an out-of-state attorney who is not practicing in Ohio courts or providing Ohio legal services, Prof.Cond.R. 5.5(b)(1) violates Article I, Section 1 of the Ohio Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[2] As applied to such an attorney, the rule violates Article I, Section 1 both because it does not "bear[] a real and substantial relation to the public health, safety, morals, or general welfare" and because it is "arbitrary" and "unreasonable," *Williams*, 88 Ohio St.3d at 524, 728 N.E.2d 342. Similarly, applying the rule to such an attorney violates the Fourteenth Amendment because it does not bear a rational relationship to any discernable state interest. *See Washington v. Glucksberg*, 521 U.S. 702, 728, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 491, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

### III. Jones's application should be granted

{¶ 48} The board recommended denial of Jones's application for the sole reason that she had engaged in the unauthorized practice of law in violation of Gov.Bar R. VII(2)(A). Because I find the rule relied upon by the board to be unconstitutional when applied to Jones and others who are similarly situated, and

---

[2] Because of my conclusion that the rule as applied to Jones violates Article I, Section 1 of the Ohio Constitution and the Due Process Clause of the Fourteenth Amendment, it is not necessary to consider her arguments that it also violates the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution and the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution.

because there was no other basis for the board's recommendation, I concur in the court's judgment approving Jones's application.

KENNEDY and DEGENARO, JJ., concur in the foregoing opinion.

_____

Bieser, Greer & Landis, L.L.P., and David C. Greer, for applicant.

Taft, Stettinius & Hollister, L.L.P., Brian G. Dershaw, and Justin D. Flamm, for the Cincinnati Bar Association.

Dinsmore & Shohl, L.L.P., Brian S. Sullivan, Mark A. Vander Laan, and Heidi W. Dorn, for amicus curiae Dinsmore & Shohl, L.L.P., in support of applicant.

Frost Brown Todd, L.L.C., and Matthew C. Blickensderfer, in support of none of the parties for amicus curiae Frost Brown Todd, L.L.C.

Thompson Hine, L.L.P., Thomas L. Feher, Frank R. DeSantis, and Karen E. Rubin, in support of none of the parties for amicus curiae Thompson Hine, L.L.P.

Bricker & Eckler, L.L.P., and Randolph C. Wiseman, in support of none of the parties for amicus curiae Bricker & Eckler, L.L.P.

Squire Patton Boggs, L.L.P., and Pierre H. Bergeron, in support of none of the parties for amicus curiae Squire Patton Boggs, L.L.P.

Porter, Wright, Morris & Arthur, L.L.P., Robert W. Trafford, and Charles C. Warner, in support of none of the parties for amicus curiae Porter, Wright, Morris & Arthur, L.L.P.

Keating, Muething & Klekamp, P.L.L., and James R. Matthews, in support of none of the parties for amicus curiae Keating, Muething & Klekamp, P.L.L.

_____