**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Brumbaugh*, Slip Opinion No. 2021-Ohio-780.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-780

IN RE APPLICATION OF BRUMBAUGH.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Brumbaugh*, Slip Opinion No. 2021-Ohio-780.]**

*Attorneys—Character and fitness—Application for admission to practice of law without examination—Omissions and inconsistencies in application materials and inaccurate statements during application process—Pending application disapproved but applicant permitted to reapply in one year.*

(No. 2020-1079—Submitted January 27, 2021—Decided March 17, 2021.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 754.

_____

**Per Curiam.**

{¶ 1} Applicant, Bridgett Gretchen Brumbaugh, is licensed to practice law in Texas and has filed an application for admission to the practice of law in Ohio without examination. The Board of Commissioners on Character and Fitness found a number of inaccuracies and inconsistencies in her application materials and

recommends that we disapprove her application but permit her to reapply in one year. Upon our review of the record, we adopt the board's findings and disapprove Brumbaugh's application.

**Background**

{¶ 2} In May 2004, Brumbaugh graduated from St. Mary's University School of Law in San Antonio, Texas, and in November 2008, she was admitted to the practice of law in Texas. In May 2018, she applied for admission to the Ohio bar without examination pursuant to Gov.Bar R. I(9).[1] In her application, she indicated that in August 2016, she temporarily moved in with her parents in Warren, Ohio, but that in February 2018, she moved back to Texas and began employment as an attorney for a law-enforcement association.

{¶ 3} The National Conference of Bar Examiners ("NCBE") investigated Brumbaugh's character and fitness and issued a report. In addition, two members of the Akron Bar Association's admissions committee interviewed her. In June 2019, the committee recommended that her application be disapproved. Brumbaugh filed an appeal, and pursuant to Gov.Bar R. I(12)(C), the matter proceeded to a hearing before a three-member panel of the board.

{¶ 4} After the January 2020 hearing, the panel requested further information from Brumbaugh's prior employers and obtained copies of court filings in Texas and Ohio cases involving Brumbaugh. The panel instructed Brumbaugh to explain why she had not disclosed three of those cases in her application and to supplement her application with additional information and documents. Brumbaugh responded to some—but not all—of the panel's supplemental questions and requests.

---

1. On June 1, 2020, we adopted amendments to Gov.Bar R. I, but because the panel heard Brumbaugh's appeal prior to the effective date of those amendments, all references to Gov.Bar R. I refer to the prior version of the rule.

{¶ 5} The panel later issued a report finding that Brumbaugh had failed to prove her current character, fitness, and moral qualifications and therefore recommended that her application be disapproved but that she be permitted to reapply in one year. The board adopted the panel's report in its entirety, and Brumbaugh has not objected to the board's report and recommendation.

**The board's findings and recommendation**

{¶ 6} The board found the following eight problems with Brumbaugh's application materials.

{¶ 7} First, the board concluded that she had failed to accurately and fully explain in her application that when she lived in Ohio, she had provided legal services to a Texas resident. In the affidavit required by Gov.Bar R. I(9)(C)(1), Brumbaugh would not agree to a statement attesting that she had not performed legal services in Ohio. Instead, she inserted "NA" under the statement. But in a different portion of her application and at her admissions hearing, she acknowledged that while in Ohio, she had completed legal work for a Texas client. The board noted that rather than inserting "NA" in the affidavit, Brumbaugh could have easily included a statement fully disclosing the legal services she had performed while physically located in Ohio. Brumbaugh, however, failed to do so. She also never revised or corrected the affidavit in her application.

{¶ 8} Second, the board found that Brumbaugh had failed to provide the level of cooperation necessary in a character-and-fitness investigation. For example, after the hearing, the panel requested that Brumbaugh submit a copy of her 2017 federal, state, and local tax returns in an attempt to learn more about the legal services she performed while living in Ohio. But Brumbaugh never produced those documents or explained why she had refused to do so.

{¶ 9} In addition, the panel discovered that Brumbaugh was a party to a dissolution proceeding in Trumbull County in 2000 and asked her to explain why she had failed to disclose that action in her application. The application required

her to identify "any" legal proceeding in which she had been named as a party, such as "[f]amily law matters (including continuing orders for child support)." Brumbaugh initially objected to the panel's request, describing it as a "hunt for information unrelated to requirements for admission without examination." But according to the panel's report, she later explained that when she completed her application, she did not believe that she was required to disclose an uncontested divorce from many years ago that did not involve child-support issues. The board concluded that Brumbaugh's "omission of such a proceeding on a[n] application, coupled with an unconvincing explanation for that nondisclosure, [was] significant."

{¶ 10} Third, the board found that Brumbaugh was unable to explain inconsistencies in her application about her prior residences. For example, she reported that she lived at one address from October 2014 to February 2015 and at a different address from February 2014 and July 2016. At her admissions hearing, she testified that she had never resided at two addresses at the same time and that "if the numbers got transposed and some dates were off, it wasn't intentional." But given the other inaccuracies with the addresses provided in her application, the board did not find Brumbaugh's explanation credible.

{¶ 11} Fourth, the board was troubled by Brumbaugh's inconsistent statements about her reasons for leaving employment with the Office of Disability Adjudication and Review ("ODAR"), a branch of the Social Security Administration. In her application, she reported that she was "let go during probation period." But in response to the NCBE's investigation, ODAR reported that Brumbaugh had not properly performed the functions of her position and that she had chosen to resign prior to the effective date of her termination. At her admissions hearing, Brumbaugh acknowledged that she had resigned from ODAR but denied that her resignation was related to the quality of her work. She resigned, she claimed, because she disagreed with a decision to "write [her] up" for being

late to work. The board found Brumbaugh's explanation "neither reliable nor complete."

{¶ 12} Fifth, the board had similar lingering questions about Brumbaugh's reasons for ending her employment with a Texas law firm. In her application, she reported that her employment with the firm ended by "mutual agreement." But in response to the NCBE investigation, her former supervisor stated that she was terminated. At her admissions hearing, Brumbaugh maintained that she and the law firm had mutually agreed to end the employment relationship. But Brumbaugh failed to submit any posthearing documentation supporting her version of events, and the board was unwilling to simply accept her explanation at face value and disregard the law firm's submission to the NCBE.

{¶ 13} Sixth, the board found that Brumbaugh had neglected a financial obligation. In her application, she admitted that she had defaulted on a debt, which she described at her admissions hearing as "junk debt" and "old debt." She further testified that she had "moved forward on that" and was current on her obligations. But after the hearing, the panel obtained filings from a Texas case—which Brumbaugh had failed to disclose in her application—indicating that in 2013, a creditor obtained a judgment lien against her for $7,811.23, plus attorney fees of $1,500, and that the debt was assigned to a new creditor in 2017. The board concluded: "The existence of a multi-thousand dollar judgment against an applicant who appears to be making no effort to attend to the debt cannot be countenanced."

{¶ 14} Seventh, the bound found numerous inconsistencies between the litigation history Brumbaugh disclosed in her application and public records obtained by the panel. For example, the panel discovered a Texas case in which Brumbaugh was a named party, although she had failed to disclose the action in her application. When the panel confronted Brumbaugh about the matter in its supplemental questions, she stated that she was not a party in the case and that her former law firm had merely represented the defendant in the matter. However, the

case file clearly showed that Brumbaugh was a named party, and the board credited the public record over Brumbaugh's explanation.

{¶ 15} In addition, although Brumbaugh disclosed in her application that she had filed a wrongful-termination and discrimination action against another former employer, she ultimately declined to pursue the lawsuit. The board found that her "explanation for her decision to file, and then seemingly abandon, the lawsuit * * * [left] as many questions as it does answers."

{¶ 16} Eighth, Brumbaugh noted in her application that while in Ohio, she "outsourced paralegal services." At her admissions hearing, she clarified that she had actually performed those paralegal services for an Ohio attorney. The panel thereafter requested information from the attorney. In one response, he stated that Brumbaugh was professional and courteous, but in a follow-up letter, he noted that he had lacked trust in her work ethic and work product. The board claims that in response to the attorney's submissions, Brumbaugh advised the panel that the attorney's inconsistent descriptions of her may be due to his "drinking/drug problem." The board expressed concern about the "cavalier manner" in which Brumbaugh made a serious allegation of substance abuse about a member of the Ohio bar.

{¶ 17} Gov.Bar R. I(11)(D)(3) provides a nonexhaustive list of factors that the board considers in assessing an applicant's character and fitness for admission to the bar. The board had "continuing concerns" regarding the following factors: (1) commission of an act constituting the unauthorized practice of law,[2] (2) failure to provide complete and accurate information concerning the applicant's past, (3) false statements, including omissions, (4) acts involving dishonesty, fraud, deceit,

---

2. The board did not conclude that Brumbaugh had engaged in the unauthorized practice of law. Rather, the board found that Brumbaugh had failed to assist the panel in its attempt to learn more about "the nature, scope, and extent of her practice of law activities while she was residing in Ohio."

or misrepresentation, (5) abuse of legal process, and (6) neglect of financial responsibilities. *See* Gov.Bar R. I(11)(D)(3)(c) and (g) through (k).

{¶ 18} Based on the foregoing, the board recommends that we disapprove Brumbaugh's application but permit her to reapply for admission without examination in one year. The board further recommends that if she reapplies, she be required to submit a new NCBE questionnaire fully responding to all questions, provide complete explanations for all omissions and inaccuracies in her 2018 application—including, but not limited to, documentation demonstrating the extent to which she provided legal services to any client while physically located in Ohio—and submit to a new interview by the admissions committee of the Akron Bar Association or any other bar association's admissions committee designated by the Office of Bar Admissions.

### Disposition

{¶ 19} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." Gov.Bar. R. I(11)(D)(3).

{¶ 20} We have previously explained that "[e]ven one incomplete answer can lead to the disapproval of an admission application if the applicant does not fully and honestly explain when the opportunity arises," *In re Application of Bagne*, 102 Ohio St.3d 182, 2004-Ohio-2070, 808 N.E.2d 372, ¶ 23, and that "avoid[ing] or shad[ing] the truth during the character and fitness proceedings" constitutes a false statement or an omission, *In re Application of Howard*, 111 Ohio St.3d 220, 2006-Ohio-5486, 855 N.E.2d 865, ¶ 9.

{¶ 21} In addition, "[t]he importance of an applicant's cooperation in the hearing process cannot be overstated." *In re Application of Harris*, 101 Ohio St.3d

268, 2004-Ohio-721, 804 N.E.2d 429, ¶ 13.   For example, in *Harris*, we disapproved the application of an applicant who, among other things, had repeatedly failed to produce financial information requested by the panel during the character-and-fitness investigation.  *See also In re Application of Mefford*, 104 Ohio St.3d 324, 2004-Ohio-6591, 819 N.E.2d 684, ¶ 11 ("seeming lack of concern on the applicant's part in the face of repeated requests [to furnish financial information] from the panel fully justifies the panel's and the board's recommendation that the applicant not be permitted to take the bar examination at this time").

{¶ 22} "And financial responsibility is critically important for lawyers." *Mefford* at ¶ 12.  " 'We expect applicants for admission to the Ohio bar and bar members to scrupulously honor all financial commitments.' "  *Id.*, quoting *In re Application of Manayan*, 102 Ohio St.3d 109, 2004-Ohio-1804, 807 N.E.2d 313, ¶ 14.

{¶ 23} In light of Brumbaugh's omitting required information from her application, her inconsistent statements during the application process, and her failure to furnish requested documents and information to the panel, we agree with the board that she has failed to prove that she currently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law in Ohio.  We therefore adopt the board's findings of fact and disapprove Brumbaugh's application.  Brumbaugh may reapply for admission without examination after one year from the date of the order issued in this matter.  If she reapplies, she shall file a new application and NCBE questionnaire fully and completely responding to all questions therein; provide a complete explanation for all omissions or inaccuracies in her 2018 application, including but not limited to, documentation showing the extent to which she provided legal services to any client while physically located in Ohio; and submit to a new character-and-fitness interview by any bar-association admissions committee designated by the Office of Bar Admissions.

Judgment accordingly.

O'CONNOR, C.J., and FISCHER, DONNELLY, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., concurs in judgment only, with an opinion joined by KENNEDY, J.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 24} I concur in this court's judgment adopting the recommendation of the Board of Commissioners on Character and Fitness that Bridgett Brumbaugh's application for admission to the Ohio bar without examination be disapproved and that she be permitted to reapply in one year. But I disagree with one aspect of the board's rationale.

{¶ 25} Some of the board's findings relate to its attempt to investigate whether Brumbaugh engaged in the unauthorized practice of law by performing legal work for a Texas client under her Texas law license while she was physically present in Ohio. For the reasons expressed in my separate opinion in *In re Application of Jones*, 156 Ohio St.3d 1, 2018-Ohio-4182, 123 N.E.3d 877, I do not think that a lawyer who practices the law of another jurisdiction in which she is licensed engages in the unauthorized practice of law simply because the lawyer is working remotely from Ohio. Indeed, it is increasingly common for lawyers to work from any number of physical locations. A Florida attorney might perform legal work while caring for family in Ohio. A Kentucky attorney might work from his home in Cincinnati during a pandemic. In my view, the state of Ohio has no legitimate interest in preventing an attorney from performing legal work within Ohio's borders when that work does not in any way touch on Ohio courts or the Ohio public. *See id.* at ¶ 44 (DeWine, J., concurring in judgment only). It is past time for this court to change its rules to make clear that an out-of-state lawyer who

happens to be working remotely in Ohio is not engaged in the unauthorized practice of law.

**{¶ 26}** Nonetheless, other independent reasons identified by the board warrant disapproval of Brumbaugh's application at this time. As the majority notes, Brumbaugh's application contained a number of omissions and inconsistencies, her responses to concerns raised by the board contradicted public records and information obtained from other people, and she failed to comply with the panel's requests for additional documentation. I therefore concur in the judgment of the court.

KENNEDY, J., concurs in the foregoing opinion.

————————————

Bridgett Gretchen Brumbaugh, pro se.

Wayne M. Rice, Bar Counsel, and Martin H. Belsky, for the Akron Bar Association.

————————————